IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02041-BNB

JOSHUA J. GURULE,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

_____

## ORDER

_____

This action seeks review of the Commissioner's decision denying the plaintiff's claim for

Supplemental Security Income Benefits under Title XVI, section 1614(a)(3)(A) of the Social

Security Act, 42 U.S.C. § 1382c(a)(3)(A).  The court has jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 1383(c)(3).  The matter has been fully briefed,

obviating the need for oral argument.  The decision is AFFIRMED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 17, 2010, the plaintiff was seen by John Kunstle, M.D., who completed a

"Colorado Department of Human Services Med-9 Form."  Id. at p. 154.[1]  The plaintiff filed his

application for supplemental security income in November 2010, stating that he had been

_____

[1]The form is used by County Departments of Human Services to determine medical
eligibility for the Aid to the Needy Disabled program.  Id.

disabled since November 1, 2009. *Social Security Administrative Record* [Doc. #11] (the "Record"), pp. 86-91.[2]

On December 15, 2010, a clinical psychologist, Brett Valette, Ph.D, examined the plaintiff at the request of the State agency. *Record*, pp. 141-144. On December 27, 2010, James Wanstrath, Ph.D, a nonexamining State agency psychologist, reviewed the record and completed a Psychiatric Review Technique form. Id. at p. 46.

The plaintiff's application was denied on December 27, 2010. *Record,* pp. 43-53. The plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at pp. 54-56.

On June 2, 2011, the plaintiff saw John Kunstle, M.D., for a general check up related to his application for supplemental security income. Id. at pp. 148-52. On June 9, 2011, the plaintiff was seen by a licensed psychologist, Dr. Carlos Rodriguez. Id. at pp. 162-63. Dr. Rodriguez completed a "Colorado Department of Human Services Med-9 Form." Id. at p. 153. On February 9, 2012, the plaintiff was again seen by Dr. Rodriguez. Id. at pp. 155-61.

The ALJ hearing was held on March 14, 2012. Id. at pp. 25-40. On March 28, 2012, the ALJ issued a written decision finding that the plaintiff is not disabled within the meaning of the Social Security Act. Id. at pp. 13-21. The plaintiff requested a review of the ALJ's decision by the Appeals Council. The Appeals Council denied the plaintiff's request for review. Id. at pp. 1-3. Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. Id. at p. 1.

---

[2]I refer to the official page numbers of the Record which are found on the lower right-hand corner of each page, not to the page numbers that are assigned by the court's docketing system.

## II.   STANDARD OF REVIEW

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  Brown, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  Hedstrom v. Sullivan, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  Id.

## III.   THE LAW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of

impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  See <u>Kelley v. Chater</u>, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.   The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2.   The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.   The ALJ must then determine if the impairment meets or medically equals in severity certain impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.   If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past work despite any limitations.

5.   If the claimant does not have the RFC to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and RFC.

20 C.F.R. §§ 404.1520(a)-(f).  See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir.

1988).

      The claimant has the initial burden of establishing a disability in the first four steps of

this analysis.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  The burden then shifts to the

Commissioner to show that the claimant is capable of performing work in the national economy.

Id.  A finding that the claimant is disabled or not at any point in the five-step review is

conclusive and terminates the analysis.  Casias v. Secretary of Health & Human Services, 933

F.2d 799, 801 (10th Cir. 1991).

## IV.   ANALYSIS

      The ALJ found that (1) the plaintiff has not engaged in substantial gainful activity since

November 5, 2010; (2) the plaintiff is severely impaired by learning disorder and borderline

intellectual functioning; (3) the plaintiff does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926); (4) the plaintiff has the

RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c) but would

require unskilled work with decreased interpersonal contact; and (5) the plaintiff is capable of

performing past relevant work as a janitor, or in the alternative, jobs exist in significant numbers

in the national economy that the plaintiff can perform.

      The plaintiff claims that (1) the ALJ erred by finding that the plaintiff's past work as a

janitor rises to the level of substantial gainful activity; (2) the ALJ's RFC finding is not

supported by the evidence; (3) the ALJ considered evidence prior to the plaintiff's onset date;

and (4) the ALJ did not have proper reasons for rejecting the opinion of Dr. Rodriguez.

### A.   Past Work as a Janitor

The plaintiff asserts that the ALJ erred at step four in finding that the plaintiff's past work as a janitor rose to the level of substantial gainful activity.  *Plaintiff's Opening Brief*, pp. 10-12.  The defendant concedes that the ALJ erred, but contends that the error is harmless because the ALJ made an alternative finding at step five.  *Defendant's Opening Brief*, pp. 19-20.  I agree.

In step four, the ALJ must determine whether the claimant has the RFC to perform his past work despite any limitations.  If the claimant does not have the RFC to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  20 C.F.R. §§ 404.1520.  Here, although the ALJ found that the plaintiff is capable of performing past relevant work as a janitor, he also found in the alternative that other jobs exist in significant numbers in the national economy that the plaintiff can perform.  Therefore, any error in finding that the plaintiff's past work as a janitor rose to the level of substantial gainful activity is harmless.

### B.   Substantial Evidence to Support the RFC Finding

In step four, the ALJ found that the plaintiff has the RFC to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c)[3] but would require unskilled work with decreased interpersonal contact.  *Record*, p. 17.  The plaintiff claims that the finding of decreased interpersonal contact is error because it is not supported by the evidence, and the ALJ failed to clarify what he meant by decreased contact.  *Plaintiff's Opening Brief*, pp. 12-16.  The plaintiff argues that the ALJ's failure to clarify the meaning of decreased interpersonal contact

---

[3]Section 416.967(c) provides that "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

"makes it impossible to review the correctness of his finding that plaintiff can perform work" and "the vocational expert was left to speculate what this limitation meant." Id. at p. 14.

As discussed above, the ALJ must determine in step three whether the claimant has an impairment or combination of impairments that meets or medically equals certain impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I. "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)." Id.

20 C.F.R. Part 404, Subpart P, Appendix I, states:

> If your impairment(s) does not meet or is not equivalent in severity to the criteria of any listing, you may or may not have the residual functional capacity (RFC) to do substantial gainful activity (SGA). The determination of mental RFC is crucial to the evaluation of your capacity to do SGA when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe.
>
> RFC is a multidimensional description of the work-related abilities you retain in spite of your medical impairments. An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders when your impairment(s) is severe but neither meets nor is equivalent in severity to a listed mental disorder.

The limitations identified in step three "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a

more detailed assessment by itemizing various functions contained in the broad categories" used in steps two and three.  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *4.[4]

When assessing an RFC for an individual with mental impairments, the ALJ should consider the individual's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.  Id. at *6.  An RFC assessment of mental limitations and restrictions "must be expressed in terms of work-related functions."  Id.

When a "claimant establishes existence of severe mental impairment that does not meet the listings, [the ALJ] must use Vocational Expert testimony or other similar evidence to meet his burden of showing claimant can perform jobs available in the national economy."  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (citing Wheeler v. Sullivan, 888 F.2d 1233, 1238 (8th Cir. 1989)).  When using Vocational Expert testimony, the ALJ must express nonexertional capacity in terms of work-related functions.  SSR 96–8p at *6.

Here, the ALJ found in step three that the plaintiff has "moderate limitations in social functioning," Record, p. 16.  In making this finding, the ALJ stated "[a]s indicated previously, claimant resided with his immediate family members (hearing testimony).  He was also able to go shopping in stores (Exhibit 3F)."  Id.  Subsequently, the ALJ stated that his RFC assessment "reflected the degree of limitation" found in his step three analysis.  Id. at p. 17.

---

[4]Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs.  Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984).

In addition, in step four, the ALJ discussed the plaintiff's self reports and the treatment records and test results of Dr. Valette and Dr. Rodriguez.  Id. at pp. 18-19.  He discussed in detail Dr. Valette's treatment record and the results of a standardized test administered by Dr. Valette which rated the plaintiff as having mild difficulty in social and occupational functioning. He specifically stated that "[g[iven that Dr. Valette's findings were consistent with the claimant's self-reports and the standardized testing, great weight was given to Dr. Valette's opinion and claimant's residual functional capacity accordingly limited him to unskilled work with decreased interpersonal contact."  Id. at p. 19.

The ALJ also discussed Dr. Rodgriguez's examination record which noted that the plaintiff "displayed an appropriate attitude, was oriented and had intact immediate recall" and "was able to follow a three-step command."  Id.  Dr. Rodriguez documented that although the plaintiff had a flat affect, a depressed demeanor, and was initially reserved and uncomfortable, the plaintiff "eventually talked to the examiner freely and rapport was established."  In addition, the plaintiff "displayed an appropriate attitude toward this evaluation and was cooperative.  He did not display any unusual or bizarre behaviors."  The plaintiff did not have any obvious expressive speech deficits, hearing problems, or visual problems.  Id. at pp. 155-56.  Dr. Rodriguez found that the plaintiff is moderately limited in his ability to interact appropriately with coworkers and the general public and his ability to maintain socially appropriate behavior. Id. at p. 161.

Dr. Rodriguez also found that the plaintiff is markedly limited in his ability to ask simple questions; request assistance; accept instructions; and respond appropriately to criticism from

supervisors.  Id.,  The plaintiff argues that the ALJ's RFC finding "does not accurately account for Dr. Rodriguez's opinion without a proper explanation."  *Plaintiff's Opening Brief*, p. 13.

"The adjudicator must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSI 96-8p at *7.  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Id.  Here, the ALJ explained that Dr. Rodriguez's conclusions regarding the plaintiff's marked impairments were not supported by the plaintiff's "multiple prior statements indicating that he was able to care for his personal hygiene, participate in household chores, work part-time, play video games for hours at a time and enjoy movies and television."  *Record*, p. 19.   The record supports the ALJ's explanation.  Id. at pp. 30-32; 141-42; 157-58.

At the hearing, the ALJ asked the Vocational Expert if a person the same age as the plaintiff, with the same education and vocational history, that functions at the medium exertional level, is unskilled, and requires decreased interpersonal contact could perform work in the region or national economy.  *Record*, pp. 37-38.  The Vocational Expert testified that such a person could work as a cook helper, a counter supply worker, and a floor waxer.  Id. at p. 38.  When asked if a counter supply worker has any amount of interaction with the general public, the Vocational Expert responded that a counter supply worker has minimal to no contact with the general public.  Id. at p. 39.

The ALJ expressed the plaintiff's nonexertional capacity in terms of work-related functions.  Specifically, the ALJ instructed the Vocational Expert to "assume that this person can function at the medium exertional level, unskilled, with decreased interpersonal contact."

*Record*, pp. 37-38.  These instructions relate to the plaintiff's mild difficulty in social functioning.

On the facts of this case and in light of the evidence relied on by the ALJ, I find that the ALJ's RFC findings substantially comply with the requirements of SSR 96–8p and that the ALJ applied the correct legal standards.  I further find that the RFC finding is supported by substantial evidence.

### C.   The ALJ's Treatment of Dr. Valette and Dr. Rodriguez's Opinions

The plaintiff argues that (1) at the hearing, the plaintiff testified that he struggled with depression his entire life, but noticed it had gotten worse with the last year; (2) "[b]ased upon that, plaintiff amended his onset date to June 9, 2011"; (3) Dr. Valette's opinion of the plaintiff's level of functioning was dated approximately six months prior to the amended onset date; and (4) therefore, Dr. Valette's opinion  "was not substantial evidence upon which the ALJ should have based his decision."  *Plaintiff's Opening Brief*, p. 17.  The plaintiff also argues that "[b]ecause Dr. Rodriguez was the only physician to examine plaintiff and offer an opinion of limitations after his [amended] onset date, his opinion is uncontroverted.  However, the ALJ essentially rejected Dr. Rodriguez's opinion without proper reasons."  *Plaintiff's Opening Brief*, p. 19.

The plaintiff filed his application for benefits in November 2010.  *Record*, pp. 86-91.  Pursuant to 20 C.F.R. § 412.912(d), the ALJ is responsible for developing a "complete medical history for *at least* 12 months preceding the month in which" the plaintiff filed his application.  20 C.F.R. § 412.912(d) (emphasis added).  In addition, the ALJ is obligated to consider *all* evidence in the record when making his determination.  20 C.F.R. § 412.920(a)(3) (emphasis

added).  Therefore, the ALJ properly considered Dr. Valette's report, and Dr. Rodriguez's report is not patently "uncontroverted."

Section 416.927, 20 C.F.R., governs the evaluation of opinion evidence in cases involving a supplemental security income benefit claim.  Section 416.927 makes clear that in every case involving supplemental security income benefits the Commissioner will weigh all medical opinion evidence and set forth the reasons why a particular weight was assigned to treating sources and other medical sources.  Generally, opinions from a treating source are given greater weight.  Id.

Drs. Valette and Rodriguez were nontreating medical sources.  20 CFR § 404.1502 (stating that "[n]ontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]").  The ALJ considers the following factors in deciding the weight given to nontreating medical opinions: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id.; Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003).  The ALJ's decision must be sufficiently specific so as to make clear the weight he gave to a medical opinion, but the ALJ is not required to expressly apply each of the factors in deciding what weight to give a medical opinion.  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007).

12

Dr. Valette examined the plaintiff on December 15, 2010, and performed intelligence testing. *Record*, pp. 142-44.  The plaintiff reported that he lives in a house with his family, he is bored and has nothing to do, and he spends "a lot" of his time in his room watching television, playing video games, watching movies, and listening to music.  Id. at pp. 141-42.  The plaintiff reported that he does his own laundry, goes to the grocery store, does some simple cooking, bathes himself, and dresses himself.  Id. at p. 141.  The only mood disturbance the plaintiff could report was that he got mad once and threw his remote control, and the plaintiff reported that his main reason for not working is that there is no work he really likes.  Id. at p. 143.

On examination, Dr. Valette found that the plaintiff has poor eye contact, poor verbal skills, a clear but slow thought process, and an affect that is "a little flat."  He also noted that the plaintiff did not feel hopeless or worthless, and has never been suicidal.  Id. at p. 142.  The plaintiff denied anxiety or panic, PTSD, or any psychotic process.  Id.  Dr. Valette performed a Wechsler Adult Intelligence Scale test and assigned a Global Functioning score of 70.  Id. at pp. 142-143.  Dr. Valette diagnosed the plaintiff with a learning disability and borderline IQ (provisional), and found that he had mild psychosocial symptoms.  Id. at p. 143.  In determining Plaintiff's mental RFC, the ALJ gave "great weight" to Dr. Valette's opinion because it was consistent with the standardized testing, as well as the plaintiff's self-reports.  Id. at p. 19.

The ALJ gave "little weight" to the conclusions of Dr. Rodriguez.  *Record*, p. 19.  In doing so, he stated:

> Dr. Rodriguez saw claimant on two instances; the first of which was for purposes of a state-aid program examination and the second at the referral of an attorney (Exhibit 6F).  Dr. Rodriguez's examination consisted of an interview and a mental status examination (*id.*).  During the examination, claimant displayed an appropriate attitude, was oriented and had intact immediate recall

though was able to recall two of three objects after a delay (*id.*).
Dr. Rodriguez also noted that claimant was able to follow a three-
step command, identify simple objects (*id.*).  In conclusion,
claimant had a history of difficulty with reading, spelling and
mathematics suggestive of borderline intellectual functioning (*id.*).
In contrast to Dr. Valette, Dr. Rodriguez was informed that
claimant experienced anxiety and depressive symptoms and, based
upon this self-report, Dr, Rodriguez diagnosed claimant with the
same (*id.*).  Dr. Rodriguez also indicated a GAF score indicative of
serious impairments (*id.*).  These conclusions were simply not
supported by claimant's multiple prior statements indicating that
he was able to care for his personal hygiene, participate in
household chores, work part-time, play video games for hours at a
time and enjoy movies and television (*see* hearing testimony).
Given these inconsistencies, Dr. Rodriguez's opinion was given
little weight.

Id.

The ALJ was clear as to the weight he gave to each medical opinion after he considered

the length, nature, and extent of the plaintiff's treatment relationship with Dr. Valette and Dr.

Rodriguez; the frequency of examination; the degree to which the doctors' opinions were

supported by relevant evidence; and the consistency between their opinions and the record as a

whole.  The law does not require more.  20 C.F.R. § 404.1502; Watkins, 350 F.3d at 1300-01;

Oldham v. Astrue, 509 F.3d at 1258.

## V.  CONCLUSION

The record contains substantial evidence to support the ALJ's decision, and the correct

legal standards were applied.  I find no error in the ALJ's decision.  Accordingly,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

Dated July 18, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

14